UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER W.,

                                    Plaintiff,

v.                                                              6:20-CV-1551
                                                                (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF KENNETH R. HILLER        KENNETH R. HILLER, ESQ.
Attorneys for Plaintiff
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.               LUIS PERE, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### MEMORANDUM-DECISION AND ORDER

        Plaintiff Peter W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").  (Dkt. No. 1.)  This case has proceeded in accordance

with General Order 18 of this Court which sets forth the procedures to be followed when

appealing a denial of Social Security benefits.  Both parties have filed briefs.  (Dkt. Nos. 15, 18.)

Oral argument was not heard.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

disposition of this case by a Magistrate Judge.  (Dkt. Nos. 4, 5.)  For the reasons discussed

below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on December 16, 1958.  (Administrative Transcript at 54, 200, 207.[1])

He is a high school graduate, who served several years in the United States Navy before

receiving an honorable discharge.  (T. 56, 479, 740.)  He subsequently obtained separate

associates degrees in registered nursing and chemical dependency counseling.  (T. 56, 478, 740.)

His employment history included positions as a cut-off saw operator at a metal fabrication

facility, a peer counselor for the Veterans Affairs Administration ("VA"), and a social services

caseworker.  (T. 56-59, 280-287.)

Plaintiff has undergone treatment for alcohol and substance abuse a number of times,

including in-patient rehabilitation through the VA.  (T. 59-60, 344-346, 478, 3196).  He also has

a history of mental health treatment, including hospitalization, for varying diagnoses including

anxiety, depression, insomnia and post-traumatic stress disorder ("PTSD").  (T. 478, 737, 977-

978, 1834, 3198-3199.)  With regard to physical impairments, Plaintiff has undergone physical

therapy for a left shoulder impairment, and he estimates he can currently lift no more than twenty

pounds.  (T. 73-74.)  He has also been diagnosed with ulcerative colitis and reports a need for

frequent bathroom breaks throughout the day.  (T. 60, 483.)

On December 6, 2017, Plaintiff filed applications for DIB and SSI.  (T. 200-213.)  Both

---

[1]  The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

applications allege an onset date of December 4, 2017.  (T. 200, 207.)  Plaintiff's applications

were initially denied on March 20, 2018.  (T. 93-115.)  Thereafter, Plaintiff filed a written

request for a hearing, which was held on October 23, 2019, before Administrative Law Judge

("ALJ") David Romeo.  (T. 49-92.)  On November 21, 2019, the ALJ issued a written decision

finding Plaintiff was not disabled under the Social Security Act.  (T. 7-27.)  On October 14,

2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

final decision of the Commissioner.  (T. 1-6.)  Plaintiff commenced this action on December 14,

2020.  (Dkt. No. 1.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she

is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

---

[2]  While the Supplemental Security Income program has special economic eligibility
requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. §
1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are
cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d
Cir. 1983) (citation omitted).

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

4

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing

court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal

standards were applied, even if the decision appears to be supported by substantial evidence.

*Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

   A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

(N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence"

is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is

deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be

upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

   "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's findings must be sustained "even where substantial

evidence may support the plaintiff's positions and despite that the court's independent analysis

of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147,

153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative

record in place of the Commissioner's if the record contains substantial support for the ALJ's

decision. *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

> **C.**      **Standards for ALJ Evaluation of Opinion Evidence**

The regulations regarding the evaluation of medical evidence have been amended for

claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including

SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no

longer give any specific evidentiary weight to medical opinions; this includes giving controlling

weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical*

*Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18,

2017),  *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider

all medical opinions and "evaluate their persuasiveness" based on the following five factors:

supportability; consistency; relationship with the claimant; specialization; and "other factors."

20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources,

deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ

must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he

or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and

(b)(1).  The two "most important factors for determining the persuasiveness of medical opinions

are consistency and supportability," which are the "same factors" forming the foundation of the

treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

---

[3]  Plaintiff's applications were dated December 6, 2017. (T. 200-213.)  Thus, the new
regulations apply in his case.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### D.    Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019)

(citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[4] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing

---

[4] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167. The Court will remain consistent with the terms as used by the Commissioner.

[5] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities;  (2) location, duration, frequency, and intensity of claimant's symptoms;  (3) precipitating and aggravating factors;  (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms;  (5) other treatment received to relieve symptoms;  (6) any measures taken by the claimant to relieve symptoms; and  (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S DECISION

In his November 21, 2019, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 13-22.)  First, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022, and had not engaged in substantial gainful activity since the alleged onset date of December 4, 2017.  (T. 13.)  The ALJ next determined Plaintiff has the following severe impairments: "alcohol use disorder; cocaine use disorder; chronic ulcerative colitis; and adhesive capsulitis of the left shoulder, status post arthroscopy, capsular release and manipulation under

anesthesia." (T. 13-14.) The ALJ then determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (T. 14-16.)

The ALJ next found, based on the above-stated impairments, Plaintiff has the residual functional capacity ("RFC") to perform "medium work" with certain limitations, stating:

> he can perform occasional overhead reaching and lifting with the left upper extremity. He can tolerate a low level of work pressure, defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, more than occasional changes in work setting, or more than occasional contact with the public. The claimant requires ready access to a restroom, but the need to use the restroom can be accommodated by typical 15 minute morning and afternoon breaks, a 30 minute lunch period, and 3 additional 5 minute bathroom breaks during the workday. The claimant is able to maintain minimal standards for attendance and on-the-job focus.

(T. 16-21.)

Based upon this RFC and the VE testimony, the ALJ determined Plaintiff is unable to perform any past relevant work, but is capable of other jobs existing in significant numbers in the national economy. (T. 21-22.) Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from December 4, 2017, through the date of the ALJ's decision. (T. 22.)

## IV.   THE PARTIES' CONTENTIONS

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1) fails to properly evaluate the materiality of Plaintiff's drug and alcohol abuse; (2) fails to properly account for Plaintiff's physical and functional limitations in his RFC determination; and (3) errs at step five by failing to reconcile an apparent conflict between the vocational expert testimony and the Dictionary of Occupational Titles. (Dkt. No. 15 at 25-39.) In response, the

Commissioner contends the ALJ's decision applies the correct legal standards and is supported
by substantial evidence.  (Dkt. No. 18 at 3-10.)

## V.     THE COURT'S ANALYSIS

### A.     Substantial Evidence Supports the ALJ's Analysis of the Record Evidence
####        and Plaintiff's RFC.

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. §
404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained
work activities in an ordinary work setting on a regular and continuing basis.  A regular and
continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."
*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d
45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must
consider a claimant's physical abilities, mental abilities, symptomology, including pain and other
limitations which could interfere with work activities on a regular and continuing basis."  *Id.*
(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by
an individual's response to demands of work . . . must be reflected in the RFC assessment.'"
*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,
2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth
with sufficient specificity to enable [the Court] to decide whether the determination is supported
by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v.
Barnhart*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every
shred of medical testimony."  *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing
*Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts

between the various medical opinions and credited those portions of the medical opinions deemed most consistent with and supported by Plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).  In light of the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and his activities of daily living, this court concludes the RFC determination was supported by substantial evidence, as summarized below.

### 1.    The ALJ's RFC Properly Considered Plaintiff's Physical Impairments.

Plaintiff contends the ALJ failed to properly consider the functional limitations associated with Plaintiff's physical impairments, particularly his left shoulder pain, hearing loss, and COPD.  (Dkt. No. 15 at 35-39.)  However, the ALJ's decision includes a thorough analysis of these impairments, including a discussion of Plaintiff's medical records, the available medical opinions, and Plaintiff's testimony.  (T. 18.)

For example, regarding Plaintiff's left shoulder impairment, the ALJ considered physician notes describing a limited range of motion and pain with movement, along with imaging studies depicting mild degenerative changes in the acromioclavicular joint, where the shoulder connects with the clavicle. (T. 18, 531, 1150-1151, 1509.)  In reaching the RFC determination, the ALJ also considered treatment notes showing improvement in the shoulder with steroid injections and non-surgical manipulation, along with Plaintiff's testimony describing

his shoulder as "improved tremendously" despite continued reduced strength and range of

motion.  (T. 18, 75, 1369, 1823.)  In calculating the RFC, the ALJ also factored in Plaintiff's

testimony estimating an ability to lift twenty pounds with his left arm, and his reported

participation in physical activities including basketball, bowling, and lifting weights.  (T. 75,

551, 612.)

Similarly, the ALJ considered Plaintiff's hearing loss, but found it imposed minimal

impact on his ability to perform basic work activities.  (T. 13.)  In November 2018, Plaintiff

reported difficulty hearing family and friends, and a need to increase the volume on the

television to compensate for the hearing loss.  (T. 384, 1470-1471, 2075.)  Plaintiff also

attributed some of his anxiety and depression symptoms to frustration from his inability to hear

others.  (T. 354.)  Plaintiff contends these limitations should have been incorporated into the

RFC.

The ALJ decided otherwise, noting Plaintiff's use of hearing aids in both ears beginning

in December 2018.  (T. 13, 1243, 1445.)  Upon reviewing Plaintiff's medical records related to

tinnitus and hearing loss, the ALJ found "the use of hearing aids prevents these conditions from

significantly affecting the claimant's ability to communicate."  (T. 13.)  In reaching this

conclusion, the ALJ relied, in part, on Plaintiff's own report of improvement after he started

using the hearing aids.  (T. 1445.)  This was a valid approach.  *See, e.g., D'Angelo v. Berryhill,*

No. 6:16-CV-6680 (MAT), 2017 WL 3537129, at * (W.D.N.Y. August 17, 2017) (ALJ had

substantial evidence to find minimal hearing limitation where medical records and plaintiff's

testimony documented improvement with hearing aids); *Norst v. Comm'r of Soc. Sec.*, No. 7:13-

CV-912 (DNH/TWD), 2014 WL 4966714, at *9 (N.D.N.Y. September 30, 2014) (substantial

evidence supported ALJ's determination plaintiff with normal hearing in left ear and

improvement in his right ear with use of a hearing aid could perform position requiring

"frequent" hearing).

Plaintiff also notes his tinnitus and related hearing loss resulted in a 10% disability rating

from the VA.[6]  (T. 225.)  This conclusion is not binding on the ALJ in the Social Security

context.  Under 20 C.F.R. § 404.1504, for claims filed on or after March 27, 2017, the

Commissioner "will not provide any analysis in [his] determination or decision about a decision

made by any other governmental agency or nongovernmental entity about whether [the claimant

is] disabled, blind, employable, or entitled to any benefits."  However, the ALJ must nonetheless

still "consider all of the supporting evidence underlying the other governmental agency or

nongovernmental entity's decision" in the record for the social security disability claim.  20

C.F.R. § 404.1504.  An ALJ satisfies this obligation by discussing relevant VA medical records

as part of his or her RFC determination.  *See Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-

0942 (ML), 2020 WL 5848776, at *9 (N.D.N.Y. October 1, 2020).  The ALJ's decision indicates

a detailed review of Plaintiff's VA and other treatment records, thus meeting his obligation.  (T.

13, 18-19.)

The ALJ conducted a similar analysis with regard to Plaintiff's diagnosed COPD, noting

his symptoms were well-controlled with an inhaler, as evidenced by examination notes and

Plaintiff's own reports.  (T. 13, 1369, 1434, 1452, 2838.)   Again, this was a valid inquiry.  *Behe*

*v. Berryhill*, No. 1:17-CV-00349-RJA, 2019 WL 2428508, at * (W.D.N.Y. June 11, 2019)

(finding ALJ had substantial evidence to conclude COPD was nonsevere and did not impose

---

[6] The VA assigns veterans a disability rating based on the severity of their disability. The rating is expressed as a percentage, representing how much the disability decreases overall health and ability to function.  https://www.va.gov/disability/about-disability-ratings/

functional limitations based upon diagnostic testing and examination notes showing no evidence

of active disease).  The ALJ did erroneously consider Plaintiff's continued smoking as evidence

of a lack of significant breathing limitations from COPD.  (T. 13.)  *See Shepard v. Comm'r of*

*Soc. Sec.*, No. 5:16-CV-1347 (ATB), 2017 WL 5508377, at * (N.D.N.Y. November 15, 2017)

(finding ALJ erred in considering Plaintiff's continued smoking because "many people with

disabling COPD ... continue to smoke because of their addiction to nicotine.") (quoting *Riechi v.*

*Barnhart*, No. 02-CV-6169, 2003 WL 21730126, at *13 (W.D.N.Y. June 3, 2003).  This error is

harmless in light of the ALJ's reliance on the other record evidence showing the absence of any

COPD-related functional limitations.  *See Tracy W. v. Comm'r of Soc. Sec.*, No. 8:18-CV-1311

(TJM), 2020 WL 858616, at *7 (N.D.N.Y. February 21, 2020) (finding ALJ's discussion of

plaintiff's continued smoking did not require remand where other substantial evidence, including

medical records and daily activities, supported finding breathing impairment was not severe);

*Wilferth v. Colvin*, 49 F.Supp.3d 359, 363 (W.D.N.Y. 2014) ("Regardless of whether plaintiff

smoked, it was the absence of evidence supporting COPD-related impairments, and not

plaintiff's smoking, that was dispositive in the ALJ's determination.")

Plaintiff correctly points out the ALJ only references Plaintiff's hearing impairment and

COPD at step two, and did not specifically mention either impairment as part of the RFC

determination.  (T. 13.)  Plaintiff thus contends the ALJ failed to adequately consider these

impairments when formulating Plaintiff's RFC.  (Dkt. No. 15 at 36.)  Such argument is not

persuasive in this case.

After providing a full recitation of Plaintiff's hearing and breathing impairments at step

two, the ALJ stated, "any such effect that the claimant's non-severe impairments would have on

his ability to function have been considered when formulating his residual functional capacity."

15

(T. 14.)  At step four, the ALJ followed through on this statement by summarizing Plaintiff's treatment history, along with the available opinion evidence related to his physical impairments, and Plaintiff's daily activities. (T. 18-20.)  Accordingly, the ALJ properly considered Plaintiff's non-severe impairments in his step four analysis.  *See Goettel v. Comm'r of Soc. Sec.*, No. 1:18-CV-1285 (WBC), 2019 WL 6037169, at *6 (W.D.N.Y. November 14, 2019) (after thorough analysis at step two led ALJ to find mental impairments were non-severe, the ALJ properly considered their impact on the RFC by reviewing applicable medical opinions and plaintiff's activities of daily living for functional limitations).  Furthermore, Plaintiff has not identified any record evidence of hearing or breathing limitations overlooked by the ALJ. Therefore, any error related to a failure to explicitly mention these impairments as part of the RFC analysis is harmless.

### 2.     The ALJ'S RFC Properly Considered Plaintiff's Mental Health Functional Limitations

Plaintiff argues the ALJ erred in his evaluation of mental impairments at step two and compounded this error by failing to properly account for Plaintiff's functional mental limitations in the RFC determination, but he primarily relies upon mental health diagnoses, without more, to support his argument. (Dkt. No. 11 at 25-35.)  The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe*." Tammy C.-J. v. Comm'r of Soc. Sec*., 523 F. Supp.3d 368, 374 (W.D.N.Y. Feb. 26, 2021) (internal citation and quotation omitted). Therefore, Plaintiff failed to identify any evidence to support his assertion of an erroneous step two analysis.  *Smith v. Comm'r of Soc. Sec*., 351 F. Supp. 3d 270, 277 (W.D.N.Y. 2018)

16

(plaintiff offered "very little argument" to support his contention of specific severe physical and mental impairments).

Moreover, the record indicates the ALJ considered evidence of all of Plaintiff's functional impairments, regardless of a specific diagnosis, as part of the RFC determination. *See Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) ("Rivera argues this conclusion is not supported by the record, as he was diagnosed with both anxiety and PTSD. However, even assuming the ALJ erred at step two, this error was harmless, as the ALJ considered both Rivera's severe and non-severe impairments as he worked through the later steps."). The ALJ also recognized the "substantial overlap in symptomology between different mental impairments," consistent with the expressed concerns of Plaintiff's treating sources about a "misattribution of psychiatric symptomology" to a specific diagnosis, further complicated by inconsistent test results and Plaintiff's near-continuous history of alcohol and substance abuse from a young age.[7] (T. 14, 737-738, 3195.)

In reaching the RFC determination, the ALJ discussed Plaintiff's treatment history for alcohol and substance abuse, as well as inpatient care, medication, and counseling through the VA for depression, PTSD, and anxiety. (T. 17-18, 478, 521, 3195.) He also considered Plaintiff's descriptions of his own symptoms of isolation, hopelessness, fatigue, and nightmares. (T. 17, 479, 1021, 1441, 2147-2148, 3089.) The ALJ also documented Plaintiff's improved management of his mental health symptoms as he progressed in what was often sporadic

---

[7] For example, one treating source at the VA cautioned: "… severity and frequency of symptoms cannot be accurately determined in order to opine whether [Plaintiff] meets diagnostic criteria for a depressive disorder at present. Additionally, due to his never having had a period of sustained and prolonged abstinence from substances it is not possible to rule out symptomology being substance-induced." (T. 737-738.)

17

treatment due to moving and changing providers.  (T. 18-19, 70.)  Treatment providers

documented improvement with group therapy and the use of emotional coping skills, with

Plaintiff's symptoms becoming more pronounced during periods of increased stress.  (T. 439,

583, 839, 1350, 1653, 1740, 1902, 2203-2204, 2565).  Furthermore, Plaintiff demonstrated an

ability to be punctual and compliant with applicable rules and regulations, and was an active

participant in his therapy.  (T. 439-440, 450, 455, 470, 73; 1902, 1989, 2098.)

The ALJ did not apply his lay expertise to these treatment notes.  Rather, he looked for

consistency between the treatment notes and the medical opinions in the record.  For example,

the ALJ found the opinion of state agency medical consultant Dr. Blackwell, who concluded

Plaintiff had "no more than mild limitations in all four broad areas of mental functioning," to be

"generally consistent with the record and partially persuasive."  The ALJ discounted this opinion

because it failed to account for Plaintiff's history of alcohol and substance abuse.  Factoring this

history into account, the ALJ found a marked limitation in the functional area of "adapting or

managing oneself"[8] as evidenced by periods of homelessness and difficulty maintaining

employment.  (T. 16, 20-21, 290, 739-740.)

The ALJ also considered the opinion of consultative psychiatric examiner Dr. Janine

Ippolito, who performed a consultative psychiatric examination of Plaintiff on January 23, 2018.

(T. 20, 478-482.)  Dr. Ippolito opined Plaintiff was able to understand, remember, or apply

---

[8] "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions."  20 C.F.R., Part 404, Subpart P, Appendix 1, 12.00 (E)(4).

simple and complex directions and instructions, interact adequately with supervisors, coworkers, and the public, sustain concentration and perform a task at a consistent pace, and maintain personal hygiene and appropriate attire with no evidence of limitations.  (T. 481.)  She further opined Plaintiff can demonstrate awareness of normal hazards and take appropriate precautions, and can regulate his emotions, control his behavior, and maintain well-being with moderate limitations.  She further opined Plaintiff "can use reason and judgment to make work related decisions with moderate to marked limitations," and "can sustain an ordinary routine and regular attendance at work with marked limitations."  (*Id*.)  Dr. Ippolito attributed these limitations to Plaintiff's drug and alcohol abuse and emotional distress.  (*Id*.)

The ALJ found Dr. Ippolito's opinion to be "partially persuasive."  (T. 20.)  He noted Dr. Ippolito's opinion, based on a single examination, was more restrictive than the consistent findings in Plaintiff's treatment notes showing good focus and judgment.  (T. 20, 2505, 3197.)  The ALJ also contrasted the consultative examiner's opinion Plaintiff would have irregular work attendance with repeated treatment notes from 2017, 2018 and 2019, showing punctual attendance at his individual and group therapy appointments after the alleged onset date.  (T. 372, 694, 704, 744, 842, 1349, 1373, 1400, 1406, 1410, 1472, 1479, 2505.)  Plaintiff did report a history of  attendance problems at rehabilitation and mental health treatment appointments at the VA facility in Canandaigua, New York due to continued alcohol and substance abuse. (T. 2505, 2847.)  The record suggests Plaintiff is referring to treatment received between 2014 and mid-2017, prior to the alleged onset date. (T. 351, 2847.)  Therefore, the ALJ had substantial evidence to discount Dr. Ippolito's opinion regarding work attendance for the period relevant to these applications for benefits.

Considering the record as a whole, the ALJ also noted Plaintiff's daily activities

19

demonstrate the ability to perform greater work-related activity than alleged, citing Plaintiff's reports of cooking, doing laundry, shopping, and driving regularly.  (T. 19, 55, 73, 77, 272-273, 480-481.)  He described social activities with family and friends, as well as recreational activities such as fishing, cycling, basketball, and bowling.  (T. 66, 578, 612, 739.)  He also reported completion of several carpentry and woodworking projects, including building a shed, repairing a porch, and making benches and shelving.  (T. 84, 85, 577).  The ALJ is entitled to consider the Plaintiff's daily activities in this manner.  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); *Herrington v. Berryhill,* No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations).

Plaintiff's challenges to the ALJ's RFC determination are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations. This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc.* Sec., No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), report-recommendation adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs*.,

705 F.2d 638, 642 (2d Cir. 1983)).  Accordingly, the Court finds the ALJ's RFC determination,

with regard to both physical and mental impairments, is supported by substantial evidence.

> **B.**     **The ALJ was not required to conduct additional inquiry into the impact on Plaintiff's alcohol and substance abuse.**

When there is medical evidence of an applicant's drug or alcohol abuse, the ALJ's

inquiry may not end with the typical five step sequential analysis.  *See* 20 C.F.R. § 416.935(a).  In

1996, Congress enacted the Contract with America Advancement Act (the "CAAA"), which

amended the Social Security Act by providing "[a]n individual shall not be considered . . .

disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the

Commissioner's determination that the individual is disabled."  Pub.L. 104–121, 110 Stat. 847

(codified at 42 U.S.C. § 1382c (a)(3)(J)).  The critical question is "whether [the SSA] would still

find [the claimant] disabled if [she] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1);

*see also* 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [ the claimant's]

remaining limitations would not be disabling, [he] will find that [the] drug addiction or

alcoholism is a contributing factor material to the determination of disability.").

The Commissioner has established a framework for ALJs to evaluate the materiality of a

claimant's drug or alcohol abuse ("DAA").  SSR 13-2p, *Titles II and XVI: Evaluating Cases*

*Involving Drug Addiction and Alcoholism (DAA),* available at 2013 WL 621536 (SSA Feb. 20,

2013) ("SSR 13-2p").  First, the ALJ considers whether a claimant is disabled considering all the

claimant's impairments as well as the DAA.  SSR 13-2p. 2013 WL 621536, at *5-6.  If the

claimant would be disabled, the ALJ then considers whether the combined effects of the

claimant's impairments, aside from the DAA, would result in an RFC determination precluding

work.  *Id.*  Where, as here, there is a co-occurring mental disorder, i.e., anxiety and depression,

the evidence must establish whether the mental disorder would be disabling with or without the

DAA.  *Id.*  The ALJ is permitted to draw inferences from evidence during any periods of

abstinence by the claimant including the length and recency of the abstinence period and whether

the severing of the co-occurring impairment increased after the period of abstinence ended. *Id.*

The plaintiff bears the burden of proof of establishing the DAA is immaterial to the

Commissioner's determination.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 124 (2d Cir.

2012) ("proving DAA immateriality is best understood as part of a claimant's general burden of

proving that [ ]he is disabled."); *Howard J. v. Saul*, No. 19-CV-1345F, 2021 WL 978843, at *4

(W.D.N.Y. March 16, 2021) (summarizing SSR 13-2p.)

        Plaintiff contends the ALJ failed to properly evaluate the materiality of drug and alcohol

abuse on Plaintiff's functional limitations, as required by SSR 13-2.  This challenge is misplaced,

as the DAA regulations and SSR 13-2 "only contemplate an analysis concerning the materiality

of drug and/or alcohol abuse *after* a claimant is found disabled at step five."  *Anderson v.*

*Berryhill*, No. 14-CV-6937 (DLI), 2017 WL 1154993, at *11 (E.D.N.Y. March 27, 2017)

(emphasis supplied).

        Here, the ALJ found Plaintiff's alcohol use disorder and substance abuse disorder to be

severe impairments at step two. (T. 13-14.)  As described above, he considered Plaintiff's

lengthy treatment history, including in-patent rehabilitation, and the resulting functional

limitations potentially attributable to alcohol or substance use disorder or other psychiatric

impairments as part of the RFC analysis.  (T. 17-21.)  Following this analysis of all of Plaintiff's

impairments, the ALJ had substantial evidence to determine Plaintiff was not disabled. (T. 21-

22.)  Because the ALJ's determination of non-disability was proper and supported by substantial

evidence, the ALJ did not err in failing to further assess DAA materiality.  *Patrick G. v. Comm'r*

*of Soc. Sec.*, No. 1:20-CV-537, 2021 WL 3421446, at *8 (W.D.N.Y. August 5, 2021) ("In general, if a plaintiff has drug addiction and alcoholism ("DAA") and if plaintiff is disabled considering all of his or her impairments, including the DAA, then the ALJ is required to perform addition analysis . . . .  However, if the plaintiff has a DAA and the ALJ determines plaintiff is not disabled considering all of plaintiff's impairments, then the analysis concerning DAA materiality ends.").

> ### C.    The ALJ Sufficiently Resolved Conflicts Between the VE Testimony and the Dictionary of Occupational Titles ("DOT").

An ALJ may engage a vocational expert to opine on the jobs a hypothetical person of the claimant's age, education, and RFC could perform in the national economy.  20 C.F.R. § 404.1560(b)(2) ("a vocational expert . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work"); *accord Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986) ("If nonexertional limitations significantly diminish [claimant]'s ability to perform the full range of 'light work,' then the ALJ should require the Secretary to present either the testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations.").

When assessing the requirements of a particular occupation, an ALJ should primarily rely upon the DOT, but may also use VE testimony to resolve more complex vocational issues.  *See Antonio P. v. Comm'r of Soc. Sec.*, No. 3:21-CV-62 (SALM), 2021 WL 5768545, at *8 (D. Conn. Dec 6, 2021) (summarizing SSR 00-4p, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000)). SSR 00-4p provides VE testimony should generally be consistent with the occupational

information contained in the DOT, and when there is an "apparent" unresolved conflict, the ALJ must obtain a "'reasonable explanation for the conflict before relying on the [vocational expert's testimony].'" *Murray v. Colvin*, No. 15-CV-6384, 2016 WL 5335545, at *13 (W.D.N.Y. Sept. 23, 2016) (quoting SSR 00-4p, 2000 WL 1898704 (SSA 2000) (alteration in original)).  Where, however, the DOT is silent on an issue, there is no actual conflict between the VE testimony and the DOT.  *See Reisinger v. Comm'r of Soc. Sec.*, No. 16-CV-428 (ATB), 2017 WL 2198965, at *10 (N.D.N.Y. May 18, 2017) (collecting cases).

The Second Circuit has held SSR 00-4p "requires the Commissioner to 'obtain a reasonable explanation' for any 'apparent' — even if non-obvious — conflict between the [DOT] and a vocational expert's testimony." *Lockwood v. Commissioner*, 914 F.3d 87, 92 (2d Cir. 2018); *see also Brault v. Commissioner*, 683 F.3d 443, 446 (2d Cir. 2012) ("a VE whose evidence conflicts with the DOT must provide a reasonable explanation to the ALJ for the conflict.").  In *Lockwood*, 914 F.3d at 92, the VE testified a claimant who was unable to perform any overhead reaching could still perform a number of occupations requiring occasional or frequent reaching under the DOT.  The Second Circuit required remand, because the ALJ's questioning of the VE did not resolve this apparent conflict.  *Id*. at 92-93.

In this case, the VE testified an individual with Plaintiff's RFC, including the restriction to "occasional overhead reaching and lifting on the left side" could perform the representative tasks of laundry laborer, cleaner, and dining room attendant.  (T. 16, 89.)  According to the DOT, each of these occupations requires either "frequent" or "constant" reaching.  *See Dictionary of Occupational Titles* 361.687-018, 1991 WL 672992; *id*. 919.677-014, 1991 WL 687897; *id.* 311.677-018, 1991 WL 672696.

During the VE's testimony, the ALJ confirmed Plaintiff was right-handed, so the lifting and reaching restrictions only applied to his non-dominant side.  (T. 87.)  The VE testified her analysis of available occupations was generally consistent with the DOT but explained the DOT did not distinguish between overhead and lateral reaching.  (T. 90.)  To resolve this specific discrepancy, the ALJ further explained she relied on her professional experience in analyzing job requirements before concluding an individual with Plaintiff's RFC could perform the representative occupations.  (*Id.*)

Plaintiff argues the ALJ should have conducted a more robust interrogation about the conflict between the VE testimony and the DOT regarding the reaching requirements of each of these jobs.  However, the record developed by the ALJ satisfies the requirements of *Lockwood*.[9] "The conflict was identified and described by the VE regarding the reaching issue, and she provided a plausible explanation."  *See Jeanette S.U. v. Saul*, No. 3:18-CV-1045 (DNH/TWD), 2020 WL 1494168, at *11 (N.D.N.Y. March 11, 2020) (finding ALJ's reliance on VE testimony rather than DOT was supported by substantial evidence.)  As the *Lockwood* court noted,  "It may well be that the apparent conflict between [the VE's] testimony and the Dictionary is susceptible to easy resolution—if, for example, the reaching involved in the three jobs at issue consists exclusively of lateral or downward reaching."  *Lockwood*, 914 F.3d at 94.

The Court concludes the ALJ fulfilled his obligation with respect to the conflict between the VE's expert testimony and the DOT's description of the representative jobs identified by the VE.  The VE's testimony provides a reasonable explanation for the conflict which, in turn,

---

[9]  The *Lockwood* court summarized the ALJ's questioning of the VE during the hearing: "After [the VE] had identified three jobs that, in her view, a person with Lockwood's limitations could perform, the ALJ asked whether this opinion 'was consistent with [the DOT].'. . .[The VE] replied, in relevant part, 'It is.'"  *Id.*

provides a basis for the ALJ's reliance on it.  Accordingly, the Court concludes the identified

conflict between the VE's testimony and the DOT does not provide a basis for remand because

the ALJ's reliance on the VE's testimony rather than the DOT was supported by substantial

evidence.

      **WHEREFORE**, it is hereby

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is

**DENIED**; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is

**GRANTED**; and it is further

      **ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: February 22, 2022
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge